# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
|---|---|---|
| Respondent, | : | NO. 03-0642 |
| v. | : | |
| ANTHONY JACKSON | : | CIVIL ACTION |
| Petitioner. | : | NO. 09-5255 |

## MEMORANDUM RE: MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

**Baylson, J.**                                                                                                 **April 27, 2010**

Petitioner Anthony Jackson is currently serving a 300-month term of imprisonment (Docket No. 110) after being convicted of possession of cocaine base ("crack cocaine") with intent to distribute, and possession of crack cocaine with intent to distribute within 1,000 feet of a school zone (Docket No. 99). After the Third Circuit denied his appeal (Docket No. 142), Jackson filed the pending pro se Habeas Corpus Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct his Sentence ("§ 2255 Motion"), which asserts several ineffective assistance of counsel claims. (Docket No. 144). For the reasons detailed below, the Motion will be denied without an evidentiary hearing.

**I. Factual and Procedural Background**

On September 25, 2003, a federal grand jury indicted Jackson of four-counts. (Docket No. 2.) After a superseding indictment was returned on March 23, 2004 (Docket No. 41), a second superseding indictment was issued on August 5, 2004, which charged Jackson with four counts: (1) possession with intent to distribute more than five grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); (2) possession with intent to distribute

more than five grams of crack cocaine within 1,000 feet of a school, in violation of 21 U.S.C. § 860(a); (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and (4) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Docket No. 68).

Jackson was originally represented by a Federal Defender, but prior to trial, another attorney, Edward J. Daly, was appointed. Daly filed a motion to suppress the evidence seized, which the Court denied after a hearing on June 15, 2004. (Docket No. 54). Jackson then requested a change of counsel, and Jeanne Damirgian was appointed. (Docket No. 59.) Jackson's jury trial began on November 1, 2004. (Docket No. 112.) Two days later, the jury returned a verdict of guilty as to the first two crack cocaine counts, and not guilty as to the remaining firearm counts. (Docket No. 99.) On February 9, 2005, this Court held a sentencing hearing, and determined that Jackson's prior convictions qualified him as a Career Offender, for which the applicable sentencing guidelines range provided for 262 to 327 months' incarceration. (Docket No. 111). Subsequently, the Court sentenced Jackson to a 300-month term of imprisonment, an 8-year period of supervised release, a $1,000 fine, and a $100 special assessment fee, for each of the counts, to be served concurrently. (Docket No. 110.)

Damirgian, Jackson's attorney, filed an appeal to Jackson's conviction and sentence with the Third Circuit. (Docket No. 106.) On April 5, 2006, the Third Circuit affirmed Jackson's conviction for violating 21 U.S.C. § 860, but vacated his conviction for violating 21 U.S.C. § 841 on the ground that the latter conviction should have merged with the 21 U.S.C. § 860 conviction as a lesser-included offense. (Docket No. 118.) On May 31, 2006, upon remand for resentencing, and after merging the two counts of which Jackson was convicted, this Court again

imposed a 300-month term of imprisonment, an 8-year period of supervised release, a $1,000 fine, and a $100 special assessment fee, resulting in a net $100 decrease in the special assessment fee from the original sentence. (Docket No. 125.)

On May 4, 2007, this Court denied a request Jackson had submitted by letter to modify his sentence by discharging the imposed fine. (Docket No. 128). On June 25, 2007, while his appeal from that decision was pending, Jackson, although still represented by counsel, filed his first pro se § 2255 Motion. (Docket No. 129.) On May 22, 2009, Court denied that § 2255 Motion as untimely. (Docket No. 137.) On December 9, 2008, the Third Circuit denied Jackson's direct appeal. (Docket No. 142.)

On November 10, 2009, Jackson filed this second § 2255 Motion pro se. (Docket No. 144.)

## II. Legal Standards

### A. 28 U.S.C. § 2255

Jackson brings his Motion under 28 U.S.C. § 2255(a), which provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A district court may grant relief under this statute if the court finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28

3

U.S.C. § 2255(b).

B.     **Ineffective Assistance of Counsel**

Jackson argues that counsel was ineffective prior to and during trial for numerous reasons, each of which will be detailed below. (Habeas Mem. 5-22.) Claims for ineffective assistance of counsel are controlled by Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'" in order to prevail on an ineffectiveness claim. Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). In order to do so, "a petitioner must establish that[] (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense." United States v. Zahir, No. 03-0800, 2008 WL 5050180, at *3 (E.D. Pa. Nov.26, 2008) (Baylson, J.) (citing Strickland, 466 U.S. at 687).

The first Strickland factor of deficient performance requires the petitioner to prove that counsel's conduct was so unreasonable that no competent lawyer would have followed it, and that counsel has "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. As for prejudice, the petitioner must demonstrate that there is a reasonable probability that, but for counsel's "unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A court need not determine whether counsel's performance was deficient before examining the prejudice suffered . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed." Id. at 697.

4

### III. Discussion

As a preliminary matter, Jackson contends that the government's response to his habeas petition was untimely and should be ignored. (Docket No. 147.) The Court, however, finds no basis for ignoring the government's response, and declines to do so or to grant habeas relief on this basis. As the Third Circuit has made clear, the "general rule" in habeas cases "is that the petitioner himself bears the burden of proving that his conviction is illegal." See United States v. Hollis, 569 F.2d 199, 205 (3d Cir. 1977). "The rationale for this precept is that criminal proceedings usually may be presumed to have been proper and legal and, consequently, a habeas petitioner must show that such a presumption is incorrect in his own case." Id.

As for Jackson's numerous ineffective assistance claims, he asserts that (A) his first attorney was ineffective for failing to obtain a plea offer; (B) his trial counsel provided ineffective assistance at trial by not challenging his drug charges and not seeking a lesser included offense instruction; (C) his counsel at sentencing ineffectively failed to challenge Jackson's classification as a Career Offender, did not object to the two point enhancement for possessing a dangerous weapon, and did not address the factors under 18 U.S.C. § 3553 ("3553 factors"); and (D) his counsel for the appellate proceedings erred by failing to raise his Fourth Amendment search and seizure argument and not filing for a reduction of sentencing based on amendments to the Sentencing Guidelines regarding crack cocaine offenses. (Pet. 5-22.) The Court will address each claim in turn.

#### A. Pretrial Plea Offer

Jackson begins by faulting his pretrial counsel, Edward J. Daly, for not making the "strategic choice to secure a conditional plea agreement," given that Jackson would not "avoid a

conviction for being in possession of a controlled substance." (Pet. 5.) Jackson further avers that this purported error rises to the level of ineffective assistance, because Jackson was not entitled to a "3-point reduction for acceptance of responsibility," and thus received a "much harsher sentence." (Pet. 5-6.)

Jackson, however, has failed to show that he suffered prejudice as a result of Daly's purported error. A guilty plea is only considered valid if it represents the defendant's "voluntary and intelligent choice among the alternative courses of action open" to him, North Carolina v. Alford, 400 U.S. 25, 31 (1970). Accordingly, only the defendant can choose to plead guilty. In United States v. Gonzalez-Rivera, 217 F. App'x 166 (3d Cir. 2007) (nonprecedential), the Third Circuit held that a petitioner failed to show prejudice for purposes of Strickland, by arguing "summarily that he would have accepted a plea agreement and that there is a reasonable probability that his sentence would have been more favorable had he pursued a plea agreement." Id. at 169. The Third Circuit determined that the "alleged prejudice that [the petitioner] may have suffered . . . is far too speculative," because the petitioner's contention that he would have accepted a guilty plea was "belied" by the fact that the petitioner "maintained his innocence throughout [the trial] proceedings and therefore was not willing . . . to plead guilty to the charges against him." Id.

The same logic applies to Jackson's facts. Like the petitioner in Gonzalez-Rivera, Jackson maintained his innocence throughout the proceedings, stating even at sentencing that "through it all, I maintain my innocence." (Sentencing Tr. 11:8, Feb. 9, 2005, Docket No. 111.) In addition, even in his habeas petition, Jackson does not aver that he ever contemplated entering a guilty plea. (See Pet. 5-6.) As a result, the record does not demonstrate that Jackson would

6

have accepted a guilty plea, and any argument that Jackson would have done so, or that the government would have extended a plea offer to Jackson, is "far too speculative," as in Gonzalez-Rivera. Because the Court concludes that Jackson did not suffer prejudice due to Daly's decision to not obtain a plea offer, the Court need not examine whether Daly's performance was deficient. See Strickland, 466 U.S. at 597 (expressly permitting courts to dispose of ineffective assistance claims based on lack of prejudice, without examining counsel's performance).

### B. Trial Proceedings

Jackson next contends that Jeanne Damirgian rendered ineffective assistance of counsel during the trial proceedings by not challenging Jackson's drug charges, or requesting a lesser included offense instruction. Below, the Court will explain why neither decision rose to the level of ineffective assistance for purposes of Strickland.

#### 1. Challenge to Drug Charges

According to Jackson, "Damirgian gave a paradigmatic example of advocacy " by arguing for and securing an acquittal for the two firearm offenses; however, Jackson contends that Damirgian ineffectively "lacked a defense strategy for the drug offenses" despite the fact that there were "inconsistencies in weight and possible chain of custody" concerns raised by the drugs. (Pet.'s Br. 6.)

The Court has determined that Jackson has not shown that Damirgian's strategy respecting the drug charges was constitutionally defective. First, it is far from clear that Jackson suffered any prejudice as a result of Damirgian's defense strategy for the drug charges, because there was strong and substantial evidence supporting the charges. The police confiscated 48.35

grams of crack cocaine from Jackson's lap, an amount which an expert testified itself sufficed to establish intent to distribute. (Trial Tr. 183:9-14, Nov. 2, 2004, Docket No. 114.) The same expert testified that the way those narcotics were packaged, the fact that the crack cocaine in question was valued at approximately $2,000, the fact that no paraphernalia to use the crack cocaine was found alongside it, and the $958 in cash confiscated from Jackson's pocket all indicate that Jackson was involved in narcotics trafficking, rather than mere possession. (Trial Tr. 183:17-187:9, Nov. 2, 2004.)

In any event, Jackson has not should that Damirgian's defense strategy respecting the drug charges was constitutionally defective. Notwithstanding the evidence described above, Damirgian diligently cross-examined each witness about the seized narcotics in order to procure the police officers' testimony that Jackson did not have a reputation of being a drug dealer, that the police did not know him for any criminal conduct, and that the police did not find any fingerprints on the seized narcotics. (Trial Tr. 70:47-71:2, 77:37-78:7, Nov. 1, 2004, Docket No. 112.) Damirgian then used the narcotics expert to call into question the officers' testimony respecting the value of the drugs, and to establish that the area where Jackson was arrested was known as the crack cocaine distribution area of other dealers. (Trial Tr. 192:15-18, 198:3-199:7, Nov. 1, 2004.) Damirgian also challenged whether Jackson had intent to distribute in a school zone though her questions to several witnesses. (Trial Tr. 11:9-12:16, 164:11-19, Nov. 2, 2004.) Jackson has not shown how such representation in any way involves "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

## 2. Lesser Included Offense Instruction

Jackson also avers that Damirgian "failed to secure a lesser included offense of simple possession in the jury instructions." (Pet. 6.) Specifically, Jackson contends that the amount of crack cocaine seized along with the fact that he was not "caught in the act of distributing these drugs" supported an argument that he was "merely in possession of these drugs." (Pet. 6.)

Jackson's argument essentially constitutes a disagreement with Damirgian's defense strategy. At trial, the narcotics expert testified at length about the numerous factors, including the amount of seized narcotics, which signified that Jackson was involved with distributing drugs, rather than merely possessing it. Rather than attempting to contradict this strong evidence, counsel instead chose to contend that the drugs did not belong to Jackson, as evidenced by her decision to question the police officers as to their inability to tie Jackson to other drug crimes, the fact that he was not known for drug crimes, and the fact that his fingerprints were not found on the seized crack cocaine. (Trial Tr. 70:47-71:2, 77:37-78:7, Nov. 1, 2004.)

Strickland counseled courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," meaning that Jackson "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." 466 U.S. at 689 (internal quotation marks omitted). In light of this presumption, the Court cannot say that Darmigian rendered ineffective assistance in deciding not to request a jury instruction respecting the lesser-included crime of possession as part of her overall strategy to question whether Jackson in fact possessed the drugs, rather than calling into question whether Jackson was involved in distributing, rather than merely possessing, the drugs. See, e.g., Neal v. Acevedo, 114 F.3d 803, 806 (8th Cir. 1997) (concluding that "trial counsel's

decision not to request the lesser-included offense instructions was reasonable trial strategy because the instructions would have been inconsistent with [defendant]'s trial defense").

### C. Sentencing

Jackson also brings three ineffective assistance claims arising out of the representation he received from Damirgian during sentencing. The Court will address each in turn.

#### 1. Career Offender Classification

Jackson faults his counsel for not challenging the pre-sentencing report's ("PSR") classification of Jackson as a "career criminal" in light of his prior offenses, for which Jackson received a "much harsher sentence." (Pet. 7.) Jackson contends that there is an "abundance of Third Circuit precedent" indicating that his prior offense of "simple assault" is not a "crime of violence" for purposes of the Sentencing Guidelines. (Pet. 7, 16-18.)

Under United States Sentencing Guidelines ("U.S.S.G.") § 4B1.1(a), a defendant is a career offender if

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

In this case, there is no question that the first two factors were met, because Jackson was over the age of eighteen at the time of his drug offenses, and his offenses involved a "controlled substance," that being crack cocaine. See U.S.S.G.§ 4B1.2. As for his prior felony convictions, U.S.S.G. § 4B1.2(a) explains that

> [t]he term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
> (1) has as an element the use, attempted use, or threatened use of physical

> force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another

Jackson was convicted of robbery and simple assault under Pennsylvania law, which each carried potential terms of imprisonment of over a year. See 18 Pa. Cons. Stat. §§ 106(b)(7), 2701(a), & 3704. Application Note 1 to U.S.S.G. § 4B1.2 then expressly provides that "robbery" is an example of a "crime of violence." As for Jackson's conviction under Pennsylvania law for "simple assault," at the time of his sentencing, the Third Circuit had expressly held that this offense qualifies as a "crime of violence" for purposes of a defendant's Career Offender status, reasoning that "[b]ecause all three parts of Pennsylvania's definition of simple assault necessarily involve conduct that presents a serious potential risk of physical injury." United States v. Dorsey, 174 F.3d 331, 333 (3d Cir. 1999) (internal quotation marks omitted). Thus, under then-existing law, the PSR properly characterized Jackson as a Career Offender under U.S.S.G.§§ 4B1.1(a) and 4B1.2.

Last year, the Third Circuit recognized that Dorsey's analytical framework had been called into question by the Supreme Court's decision in Begay v. United States, 553 U.S. 137 (2008), which now requires a crime to "(1) present a serious potential risk of physical injury and (2) be roughly similar, in kind as well as degree of risk posed, to the examples [of] burglary, arson, extortion, or use of explosives . . . , in order to qualify as a 'crime of violence.'" United States v. Johnson, 587 U.S. 203, 207-08 (3d Cir. 2009).

Even assuming arguendo that Jackson, if sentenced today, has a meritorious argument

11

that his simple assault conviction does not qualify as a "crime of violence,"[1] his counsel at sentencing did not render constitutionally ineffective assistance by failing to raise an argument that flew in the face of existing precedent and could only arguably find support in subsequent case law; rather, such a decision falls within the "wide range of professionally competent assistance" required by the Sixth Amendment, Strickland, 466 U.S. at 690. See Smith v. Murray, 477 U.S. 527, 535-36 (1986) (finding no ineffective assistance in counsel's failure to pursue an objection to the admission of testimony foreclosed by then-existing law, because "[i]t will often be the case that even the most informed counsel will fail to anticipate a state appellate court's willingness to reconsider a prior holding or will underestimate the likelihood that a federal habeas court will repudiate an established state rule").

### 2. Two-Point Enhancement for Possessing a Dangerous Weapon

Next, Jackson contends that his counsel at sentencing was ineffective for failing to object to the PSR's recommendation that a "two-point enhancement" be applied for using a "firearm" pursuant to U.S.S.G. § 2D1.1(b)(1), even though this was "inconsistent with the jury's verdict of not guilty" for both firearm offenses. (Pet. 8, 18.) Jackson's argument, however, is without merit, because the PSR does not apply a two-point enhancement under U.S.S.G. § 2D1.1(b)(1). Instead, the PSR applies a two-point enhancement to his base offense level of 30 "pursuant to U.S.S.G. §[§] 2D1.2(a)(1) and 2D1.1, based on the amount of drugs that were confiscated, in this

---

[1] Because Jackson's counsel at sentencing was not constitutionally ineffective for failing to raise an argument that was not supported by then-existing law, the Court need not address the government's argument that under current law, Jackson's conviction for simple assault "would still meet the definition of a crime of violence." (Gov't Resp. 15-16.) The Court notes, however, that the Johnson court had "no trouble concluding" that an "intentional or knowing" violation of Pennsylvania's simple assault statute qualifies as a crime of violence "in the ordinary case." 587 U.S. at 210-11 (internal quotation marks omitted).

case 48.35 grams of crack cocaine." (Gov't Sentencing Mem., Docket No. 104, at 3.) U.S.S.G.§ 2D1.2(a)(2) provides for an enhancement because the offense was committed in "protected location," that being a school zone. As a result, the Court finds no basis upon which to conclude that a two-point enhancement was applied to Jackson during sentencing for possessing a dangerous weapon, and thus, his counsel was not ineffective for failing to object to such an enhancement.[2]

### 3. 3553 Factors

Jackson also avers that his counsel at sentencing "failed to adequately interview Jackson about his personal history relevant to the sentencing proceedings" and "failed to investigate a number of plausible arguments that mitigate" the seriousness of his crime, in order to counter the government's "artfully articulated" arguments respecting the 3553 factors. (Pet. 8-9, 18-20.)

Upon review of the record, the Court finds that Jackson's counsel at sentencing in fact raised numerous arguments respecting the 3553 factors. Counsel argued that weight should be given to Jackson's prior record, the fact that his two drug charges did not involve violence, and that the Career Offender guidelines substantially overstated "what it takes to protect society from him for a reasonable period of time to teach him a lesson, to be a deterrent to him." (Sentencing Tr. 16:8-17:2, Feb. 9, 2005.) In light of such advocacy, the Court will not second-guess counsel's arguments and cannot find that her arguments respecting the 3553 factors fell outside

---

[2]The government's brief suggests that Jackson "likely is referring to the first version of the [PSR], dated January 12, 2005, in which there was a two-point enhancement assessed for his possession of a gun during the commission of his offense of conviction," which his "counsel successfully challenged . . . before sentencing," resulting in the enhancement's removal from the final [PSR]." (Gov't Resp. 17.) Regardless of whether or not this is true, the record, as described above, belies Jackson's argument that a two-point enhancement was applied due to his purported possession of a firearm.

13

of the "wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

D.     **Appellate Proceedings**

Jackson then raises two ineffective assistance claims respecting legal representation he received during his appellate proceedings. As the Court will explain, neither constitutes a violation of his Sixth Amendment rights.

1.     **Fourth Amendment Search and Seizure Claim**

According to Jackson, his appellate counsel rendered ineffective assistance by not raising the Fourth Amendment search and seizure issue Jackson presented in support of his Motion to Suppress at his trial. (Pet. 9.) In particular, Jackson contends that this Court conceded that no circuit precedent provides that "the police [can] get a car door opened in these circumstances where the driver of a car is slumped," and that he might have prevailed on appeal on this issue of "first impression." (Pet. 9 (internal quotation marks omitted).)

Jackson's Fourth Amendment search and seizure claim, however, is without merit. As the officers' testimony established, Jackson was slumped over in his car, unresponsive, with the car still in gear but braked when the traffic light turned green. Only after the defendant failed to respond to their calls, did the police officers pry open the window to open the door, upon which the officers saw in plain view crack cocaine on Jackson's lap. (Trial Tr. 60:43-63:35, Nov. 1, 2004.) In Cady v. Dombrowski, 413 U.S. 433, 447 (1973), the Supreme Court held that the entry into a defendant's vehicle without a warrant is constitutionally reasonable under the Fourth Amendment in light of the "concern for the safety of the general public." As for the seizure of the crack cocaine, under the plain view exception, "law enforcement authorities must have been lawfully on the premises, the discovery must have been inadvertent, and the incriminating nature

14

of the item must have been immediately apparent." United States v. Scarfo, 685 F.2d 842, 845 (3d Cir. 1983). As this Court already concluded on June 15, 2004 in denying Jackson's Motion to Suppress, the facts presented in this case fall squarely within the plain view exception, and Jackson's Fourth Amendment search and seizure claim is without merit. Under Strickland, Jackson's appellate counsel cannot be ineffective for failing to raise a meritless issue on appeal. See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

### 2. Sentencing Guideline Amendments Regarding Crack Cocaine Offenses

Next, Jackson avers that his counsel was ineffective for not bringing a challenge under "a myriad of cases involving cocaine base (crack), and federal sentencing as a whole." (Pet. 10.) Jackson's argument appears to be that counsel should have filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 18 U.S.C. § 3582(c)(2), which reduces a sentence for a defendant was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," "if such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." Relief under section 3582(c)(2) is not available, however, if the applicable "amendment . . . does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B).

Jackson's guideline range did not rest on U.S.S.G. § 2D.1.1's crack cocaine provision, which has been amended by Amendment 706, but was based on his status as a Career Offender, which increased his base offense level to 34. In United States v. Mateo, 560 F.3d 152 (3d Cir.

2009), the Third Circuit joined several of its sister circuits in holding that "Amendment 706 simply provides no benefit to career offenders," because it does not lower the sentencing ranges for such defendants. Id. at 155. As a result, Jackson is not entitled to relief under section 3582(c)(2), and his counsel was not ineffective for failing to "raise a meritless argument." Sanders, 165 F.3d at 253.

## IV. Conclusion

For the reasons stated above, none of Jackson's ineffective assistance of counsel claims meets the Strickland standard. Accordingly, this Court will deny his pending Motion without a hearing. The Court also does not find any "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which warrants a certificate of appeal in this case. An appropriate Order follows.

O:\Criminal Cases\03-642 Jackson, US v\Jackson Habeas Mem.wpd